RAYMOND P. AHEARN *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Plymouth. December 10, 1906. — February 28, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence. Street Railway. Evidence,* Of operation of mind, Of custom, Materiality. *Practice, Civil,* Exceptions.

In an action against a street railway company by a lineman employed by a telephone company for injuries caused by the plaintiff being struck by a car of the defendant as he was climbing a pole of his employer, if it appears that the pole was between two tracks of the defendant, that the plaintiff was equipped with "spurs, belt, pliers and cutters," and had in his hands the hand line attached to the wire which was to be strung upon the pole, that before he started to ascend the pole he saw a car approaching on one of the tracks about one hundred and fifty feet away, which appeared to be going at the rate of ten miles an hour, that he then was ordered by the "boss" in charge of the work to ascend the pole, and went up the side nearest to the track on which the car was approach-

ing, with his back to the track, knowing that when he got upon the pole it would be impossible for him to look to see where the car was, that it was customary for the men on the ground to give warning of the approach of a car, and that the "boss" on the ground motioned for the car to stop, but the motorman disregarded the warning and ran by the pole which the plaintiff was climbing, causing the accident, there is evidence for the jury of due care on the part of the plaintiff, as the jury can find that the plaintiff relied and had a right to rely upon the "boss" to notify the car to stop and to give him notice of any impending peril while he was on the pole, and the fact that the warning was to have been given by a person not in the service or control of the defendant is immaterial upon the question of the plaintiff's due care; and also there is evidence of negligence of the defendant.

At the trial of an action by a lineman in the employ of a telephone company against a street railway company for injuries from being struck by a car of the defendant as he was climbing a pole of his employer between the tracks of the defendant, where it appears that the plaintiff was going up the side of the pole nearest to the track on which the car was approaching, if the plaintiff is asked why he went up that side of the pole, and answers that it "was the safe side to go," this must be interpreted to mean that the plaintiff thought at the time that it was the safe side, and is admissible as a reason for his action. Following *McCrohan* v. *Davison*, 187 Mass. 466.

At the trial of an action by a lineman in the employ of a telephone company against a street railway company for injuries from being struck by a car of the defendant as he was climbing a pole of his employer between two tracks of the defendant, where it appears that the plaintiff was going up the side of the pole nearest to the track on which the car was approaching, evidence that in stringing wires on poles near street railway tracks it was customary for men upon the ground to give notice to linemen of an approaching car, is admissible upon the issue of the plaintiff's due care.

At the trial of an action by a lineman in the employ of a telephone company against a street railway company for injuries from being struck by a car of the defendant as he was climbing a pole of his employer between two tracks of the defendant, where it appears that near the pole a sewer was being constructed and on each side of the trench were two red flags, there is no error in admitting evidence that these flags were used as danger signals, to warn people and "also the cars, particularly the cars," that a dangerous construction was going on there, this being admissible to show the condition of things at the time of the accident.

If in an action for personal injuries the defendant objects to the admission of certain evidence and it is admitted by the judge subject to the defendant's exception, and, after a charge by the judge to which the defendant takes no exception, the jury return a verdict for the plaintiff, in the argument by the defendant of his exception to the admission of the evidence, he cannot take the ground that the judge in his charge to the jury suggested an erroneous bearing of the evidence and enlarged its proper scope.

TORT against the Boston Elevated Railway Company for personal injuries from being struck by a car of the defendant on Blue Hill Avenue in Boston on September 25, 1905, while the plaintiff was in the employ of the New England Telephone and Telegraph Company and was working as a lineman on a

pole of the last named company.  Writ dated November 18, 1905.

At the trial in the Superior Court before *Bell*, J. the jury returned a verdict for the plaintiff in the sum of $1,033.33 ; and the defendant alleged exceptions to the refusal of the judge to rule that upon all the evidence the plaintiff was not entitled to recover and to the admission of certain evidence which is described in the opinion.

*E. P. Saltonstall & S. H. E. Freund*, for the defendant.

*T. H. Buttimer*, for the plaintiff.

HAMMOND, J.  The plaintiff was an experienced lineman, and at the time he was struck by the car was in the employ of a telegraph company and was climbing one of its poles, which was situated between two tracks belonging to the defendant on Blue Hill Avenue.  He was one of a gang of men consisting of " three climbers, including himself, two ground men, and the boss," who were engaged in putting wires on the poles.  The process of doing this is thus described by the plaintiff: ·" The coils of wire . . . [are] . . . set on reels and . . . they [the men] hitch a running or hand line to these and take that running line and throw it over the pole and pull the wire through and stay on the pole till the wire gets by."  There were two sets of the defendant's tracks, one the inbound track and one the outbound track ; and the telegraph poles were substantially in the middle of the space between the two tracks.  The pole upon which the plaintiff was at the time of the accident was not straight, but for several feet from the surface of the ground inclined toward the inbound track so that the distance between it and the extreme projection of the roof of a car passing on that track was only one foot and four inches, which is eight and a half inches less than it would have been if the pole had been straight.

As to the manner in which the accident occurred the plaintiff testified that McDonald the boss gave him a hand line and told him to ascend the pole; that just before this the hand line was on the track and, a car coming along, the plaintiff had to get it off the track; that after that car had passed McDonald gave him the order to ascend ; that he (the plaintiff) took the hand line, glanced " down the street and did not see anything or any car that he thought would do any damage," and then walked

across and started to climb the pole; that he had on "spurs, belt, pliers and cutters," and in his hands the hand line; that with the assistance of his spurs he reached the first step, which was nine or ten feet from the ground; that in going up the pole he used his hands "to balance some"; that he went up on the side nearest the inbound track, with his back to the track; that the other men were working upon the same side; that as he went up he was hit by the car; that at that time he had caught hold of the first step with one hand and of the second step, which was eighteen inches higher up, with the other; that when he was hit his left hand was knocked off, then the right, and he dropped to the ground in a faint.

The evidence showed that the day was clear, the road straight, and that there was nothing to obstruct the view for a half mile in the direction from which the car came. Upon cross-examination the plaintiff testified that before he started to ascend the pole he saw the car which afterwards struck him, coming towards him; that it then looked about one hundred and fifty feet away, and appeared to be going ten miles an hour; that before he started up the pole he did not notice that the pole slanted toward the track upon which the car was coming, although there was nothing to prevent him from seeing that fact. He further testified that after he had looked and seen this car one hundred and fifty feet away McDonald passed him the line, as before stated; that after he received the order to go up the pole and had stuck his spurs into it, he did not look to see where the car was although he knew that it might be much closer to him than when he first saw it; that before he started up the pole he realized that when he got on to the pole it would be impossible for him to look and see "where the car was at all"; that one can stand still on a pole and look out to one side, and that it is only when actually ascending a pole that one cannot look out at the side; that if he had stopped anywhere on the way up he could have looked either way, but he did not do it because it was not customary.

It further appeared that the part of the car with which he came in contact was the roof, and that in going up the pole one's buttocks and hips are thrown out "a little bit" at every step.

It is urged by the defendant that the plaintiff was not in the exercise of due care inasmuch as the evidence shows that with full knowledge that a car was approaching he went up on the side of the pole nearest the track upon which the car was coming, and took no precaution whatever to protect himself from injury; and that therefore the case should stand with cases like *Quinn* v. *Boston Elevated Railway*, 188 Mass. 473. The answer of the plaintiff however is that he relied upon McDonald to warn him if the car should come dangerously near, and that he had a right thus to rely upon him. Upon this point the case is close. Upon an inspection of the evidence, however, we are satisfied that the jury were warranted in finding that in view of the various articles with which the plaintiff was incumbered at the time he was on the pole, the nature of the work he was expected to do, the close attention necessary to its proper execution, and the possibility of injury from passing cars, it was reasonably necessary for the protection of the lineman and for the proper dispatch of the business that some one should be on the ground to notify the lineman of approaching danger; and further, that in this case the plaintiff did rely and had the right to rely upon McDonald to notify the car to stop and to give him notice of any impending peril while he was on the pole. Upon such findings the case is clearly distinguishable from cases like *Quinn* v. *Boston Elevated Railway, ubi supra*, and more closely resembles *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532, and similar cases. And it is immaterial upon the question of the due care of the plaintiff whether this warning was to be given by some party other than the defendant and its servants. The question of the due care of the plaintiff was properly submitted to the jury.

There also was evidence of the negligence of the defendant.*

---

* There was evidence produced by the plaintiff that it was customary for the men on the ground to give warning in the case of the approach of cars, and that on this occasion the foreman on the ground motioned for the car to stop, but the motorman disregarded the warning, and, without abating the speed of the car, ran by the pole which the plaintiff was climbing. There also was evidence that near the pole a sewer was being constructed, and on each side of the trench were two red flags used as danger signals, to warn people and " also the cars, particularly the cars " " that there was a dangerous construction going on."

We pass to the questions arising upon the admissibility of evidence. The answer of the plaintiff when asked why he went up on the side of the pole "on which . . . [he] . . . did," that it "was the safe side to go," must be understood not as a statement by the witness that it was the safe side, but that he thought at the time that it was, and hence as a reason for his action it was admissible. *Whitman* v. *Boston Elevated Railway*, 181 Mass. 138. *McCrohan* v. *Davison*, 187 Mass. 466.

The evidence as to the custom of giving notice to linemen by men upon the ground was rightly admitted. It bore upon the question of the plaintiff's due care, and on that point it is immaterial that the action was against some other party than the employer of the plaintiff.

The evidence that the flags were stationed to notify the people that there was danger, "also the cars, particularly the cars," or "that there was a dangerous construction going on" there, was admissible to show the condition of things. If, as is now contended by the defendant, the judge in his charge to the jury suggested an erroneous bearing of the evidence and enlarged its proper scope, the answer is that no exception was taken to the charge.

*Exceptions overruled.*