JOHN HANLEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    December 8, 1908. — February 23, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Negligence.    Street Railway.*

In an action by a workman in the employ of a gas company against a corporation operating a street railway, for personal injuries alleged to have been caused by the negligence of the servants of the defendant while the plaintiff was in the exercise of due care, there was evidence from which it could have been found that the plaintiff was one of a gang of four workmen sent by the gas company to repair a leak in a gas main in a city street, that the pipe was about three feet in diameter and nearly four feet below the surface, that in order to get at the leak the men dug a deep trench extending below the pipe and about two and one half feet beyond it on each side, while above the trench on one side was a track of the defendant's railway, over which cars ran at frequent intervals, that owing to the depth of the trench the plaintiff was obliged to stand on the pipe, and, as each of the other workmen passed up a shovel full of earth, to take the shovel and throw the earth into the street, that after the work of excavation had begun the defendant had stationed a flagman in the vicinity, whose duty it was, not only to warn travellers on the street to avoid the trench, but also to warn the men at work when cars were approaching on the track, that, until the approach of the car which caused the accident, the flagman had notified the plaintiff whenever a car was coming and the plaintiff relied on such warning being given, that as the trench grew deeper the earth became damp, and, dropping on the pipe as the plaintiff lifted it out, made the top of the pipe slippery and the plaintiff's footing insecure, that the plaintiff found himself slipping and to keep from falling into the trench grasped the rail of the defendant's track, when a car of the defendant, moving at the rate of from eighteen to twenty miles an hour, ran over his fingers, the plaintiff having received no warning of the car's approach. *Held*, that the questions of the due care of the plaintiff and the negligence of the defendant were for the jury.

TORT, for injuries to one of the plaintiff's hands from a car of the defendant running over his fingers, when he was working in a trench in the employ of the Boston Gas Light Company and, having lost his footing on a slippery gas main, had clutched at one of the rails of the defendant's track to save himself from falling into the trench, as described in the opinion. Writ dated June 2, 1905.

In the Superior Court the case was tried before *De Courcy*, J., who reported it for determination by this court as stated in the opinion.

The case was argued at the bar in December, 1908, before *Knowlton*, C. J., *Morton*, *Hammond*, *Braley*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*W. B. Grant*, (*J. M. Daly* with him,) for the plaintiff.

*F. H. Chase*, (*R. M. Bowen* with him,) for the defendant.

BRALEY, J. This is an action of tort to recover damages for injuries caused by a car of the defendant passing over and partially cutting off two fingers of one hand of the plaintiff's, while he was in a trench helping to repair a gas main. In the Superior Court at the close of the plaintiff's evidence a verdict was ordered for the defendant, and at the plaintiff's request the case has been reported to this court, with an agreement, that if the evidence would justify a verdict for him, judgment in his favor is to be entered for the sum of $1,000; otherwise the verdict is to stand.

It is stated in the report, that at the time of the accident the plaintiff, who was a member of a gang of four workmen, was lawfully at work in a public way known as Dorchester Avenue as an employee of the Boston Gas Light Company, by which the men had been sent to repair one of its gas mains that leaked. In excavating above and around the pipe, which was about three feet in diameter and nearly four feet below the surface, after the trench had reached the sides of the pipe and while two of the men were shovelling below, the plaintiff, owing to the depth of the trench, was obliged to stand on top of the pipe, and, as each man passed up a shovel full of earth, to take the shovel and throw the earth into the street. The trench extended about two feet and six inches on each side of the pipe, and above it on one side was the inward track of the defendant's

railway, over which cars ran at very frequent intervals.  The defendant had stationed a flagman in the vicinity, whose duty upon somewhat contradictory evidence could be found to have been, not only to warn travellers on the street to avoid the trench, but also to warn the men at work when cars were approaching on this track.   From the plaintiff's evidence the jury could find, that, previous to the approach of the car which caused the accident, the flagman had notified him whenever a car was coming. It is plain, as the plaintiff said, not only that while standing on the pipe he could see the cars as they came up on his right hand, but also that, if he leaned far enough over to his left hand as they passed, there was space enough for them to pass without coming in contact with his person.   But, after the flagman arrived between eight and nine o'clock in the morning and entered upon his duties, the plaintiff substantially relied upon him, and whenever a warning was given of an approaching car, if " handling the shovel down," he would rise up and lean to the left, until the car went safely by.   If before the flagman came the plaintiff looked out for himself, it cannot be said as matter of law that after the arrival of the flagman he was negligent because to quite an extent he relied upon the warning from him instead of relying entirely upon his own observation.   The flagman, among other duties, attended for this very purpose, and had previously warned the plaintiff of the approach of cars until just before the accident.   If the defendant did not intend the plaintiff or his fellows to understand that they were to be warned when cars were to pass, then, having misled the plaintiff to his harm, it should not be permitted to turn around and say that notwithstanding its conduct the plaintiff took his chances and should have depended entirely upon himself. *O'Leary* v. *Haverhill & Plaistow Street Railway*, 193 Mass. 339.  *Ahearn* v. *Boston Elevated Railway*, 194 Mass. 350.

It is urged by the defendant that, even if the jury under these conditions could have found that either an express or implied duty to warn the plaintiff rested upon it, there was no necessity of giving a warning, because the plaintiff would have been in a position of safety if his footing on the pipe had not been insecure, causing him to slip.   But the jury could find that the plaintiff was about his work in the proper and usual way, even if, as

the trench grew deeper, the soil became damp, and some of it, dropping on the pipe as the plaintiff lifted it out, caused his foothold to become slippery and less firm. Of this condition doubtless he was aware. The essential element, however, of contributory negligence is that the doer of the negligent contributing act either knew or by the exercise of reasonable diligence ought to have known of the possible consequences. But an instinctive act or movement of safety in anticipation of a fall, while voluntary and based upon reason, is not of itself to be measured as to its carefulness by the cool weighing of all the probabilities in which a disinterested onlooker might have indulged. When viewed in the light of common experience the jury could say that the plaintiff's knowledge of the attendant circumstances would not lead him conclusively to anticipate, that, if he slipped and in falling on the spur of the moment grasped the rail to prevent dropping into the trench, an on-coming car, whose approach he had no reason to apprehend because no warning had been given, might cut off his fingers. *Quirk* v. *Holt,* 99 Mass. 164, 167. *Hill* v. *Winsor,* 118 Mass. 251. *Finnegan* v. *Winslow Skate Manuf. Co.* 189 Mass. 580. *Brown* v. *Nawn,* 195 Mass. 161, 164.

Nor can it be said, as matter of law, that there was no evidence of the defendant's negligence. If neither the defendant's flagman nor its motorman nor its conductor could be charged with knowledge that the pipe had become slippery, the flagman knew, and the others either knew or could have been found to have known of the excavation and that the men were at work in the trench in the ordinary way making the necessary repairs. The usual warning from the flagman might have given the plaintiff time to choose between jumping into the trench, and reaching over and grasping the rail at the peril of losing his hand. In such a situation the mind reasons instinctively, and it is not outside the pale of common knowledge that even a few seconds might have saved the plaintiff from injury. Or, if instead of running at a speed which could have been found upon conflicting evidence to have been from eighteen to twenty miles an hour, the motorman or conductor had slackened the speed of the car, the plaintiff might have recovered his footing and have released his grasp before the

car passed over. *Quirk* v. *Holt,* 99 Mass. 164. *Hill* v. *Winsor,* 118 Mass. 251. The combination of circumstances out of which the accident arose, even if somewhat peculiar and unusual, does not seem to be any more complex or reasonably unforeseeable than in the cases of *Powell* v. *Deveney,* 3 Cush. 300.; *McDonald* v. *Snelling,* 14 Allen, 290, and *O'Leary* v. *Haverhill & Plaistow Street Railway,* 193 Mass. 339, in each of which it was held that the questions of the plaintiff's due care and of the defendant's negligence were for the jury. See also *Turner* v. *Page,* 186 Mass. 600 ; *Fairbanks* v. *Kerr,* 70 Penn. St. 86 ; *The European,* 10 P. D. 99.

In accordance with the terms of the report, the verdict for the defendant must be set aside, and judgment entered for the plaintiff in the sum of $1,000.

*So ordered.*