EDMUND Y. ANTHONY, administrator, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Bristol. October 24, 1910. — February 27, 1911.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability, Railroad, In freight yard. *Railroad.*

In an action, by an administrator of the estate of a car inspector against a railroad corporation by which he was employed, for causing his death by reason of the negligence of a conductor of a switching engine in a freight yard of the defendant in running a car against a stationary car with a disabled brake, which the plaintiff's intestate was engaged in inspecting, and thus causing the disabled car to run over the intestate, if there is evidence warranting a finding that the intestate rightfully was standing between the rails of a track in the proper performance of his duty, that another car inspector was with him and that when two inspectors were together in this way and one of them was examining a car he had a right to rely upon the vigilance of the other, the question whether the intestate was in the exercise of due care is for the jury.

In an action, by the administrator of the estate of a car inspector against a railroad corporation by which he was employed, for causing the death of the plaintiff's intestate, if there is evidence that a conductor in a freight yard of the defendant, who was in charge of the switches in the yard and of a switching engine and train, drove a car against a stationary disabled car, which the intestate was engaged in inspecting, standing in front of it between the rails of the track, when the conductor knew that the disabled car might be undergoing repairs and also knew that the car driven against it had no brakeman upon it to check or control its speed, and thus caused the disabled car to run over the plaintiff, there is evidence for the jury of negligence on the part of the conductor for which the defendant is responsible under R. L. c. 106, § 71, cl. 3, St. 1909, c. 514, § 127, cl. 3.

TORT, by the administrator of the estate of Benjamin F. Anthony, for the conscious suffering and death of the plaintiff's intestate, while in the employ of the defendant as a car inspector, from being run over by two cars of the defendant at its freight yard in Taunton on October 17, 1907, at about three o'clock in the afternoon, the suffering and death being alleged to have been

the result of the negligence of some person in the service of the defendant who was in charge or control of a train and of a signal or switch near the track on which the plaintiff's intestate was run over.   Writ dated December 20, 1907.

In the Superior Court the case was tried before *Bond*, J.   The material evidence is described in the opinion.   At the close of all the evidence the defendant asked the judge to rule, (1) that the plaintiff's intestate was not in the exercise of due care when injured so that the plaintiff could not recover, and (2) that on all the evidence the jury must find for the defendant.   The judge refused to make either of these rulings, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $1,500, of which $500 was for conscious suffering.   The defendant alleged exceptions.

The case was argued at the bar in October, 1910, before *Knowlton*, C. J., *Hammond, Loring, Braley,* & *Sheldon*, JJ., and afterwards was submitted on briefs to all the justices.

*F. S. Hall,* (*T. J. Feeney* with him,) for the defendant.

*J. W. Cummings,* (*C. R. Cummings* with him,) for the plaintiff.

SHELDON, J. If the plaintiff can rely as to the care of his intestate upon nothing but the testimony of his witness Robertson, the only eye-witness of the whole of the accident by which the intestate lost his life, he has failed to show that his intestate was then in the exercise of due care.   The conclusion then could be properly stated in the language of the defendant's brief: "It is ordinarily dangerous for a man anywhere to stand between the rails of a track of a steam railroad.   This is true whether a man is an employee or is not in the service of the company.   Here was a man, over seventy years of age, who had finished inspecting the train which had come into the Taunton freight yard, in broad daylight on a pleasant day, crossing the tracks of a busy yard.   Cars were moving down on the different tracks in plain sight, and with the usual noise, so that any one in or about the yard must have known that a car was likely to come at any time on any track.   The plaintiff's intestate, with his companion Robertson, might have crossed the track on which he was killed in many different places, but he chose to cross in the rear of a stationary car, and to pause in his act of crossing in a place of

danger, where he could not see or hear a train that might come on the track where he was standing, and where he could not be seen or heard by any one who might send a car down on that track." The case would be governed by *Lizotte* v. *New York Central & Hudson River Railroad*, 196 Mass. 519, and the cases there cited.

The plaintiff contends, however, that upon other evidence and in spite of the testimony of Robertson it could be found that his intestate, who was a car inspector, was engaged at the time of the accident in examining the stationary car, and was rightfully between the rails in the proper performance of his duty, and so might well be found to have been in the exercise of due care. This contention requires a careful scrutiny of the evidence.

The witness Demers testified among other things that there was no brake, " that the brake was no good," upon this car, and after the car had been " kicked " with others upon track number three or four, he gave a notice of this fact to Lyons, the conductor, who was in charge of the switching, by shouting to him, and warned him not to kick this car off; that Lyons was then a little farther away from the witness than the intestate, and he did not know whether the intestate heard it or not; if there was no noise he might have heard it. He testified also that the intestate was much farther from him than Lyons was, in the opposite direction, six times as far away. There was other testimony as to the comparative distance from this witness of Lyons and the intestate, the result of which in connection with the other evidence was to make it a question for the jury whether this outcry of Demers was heard by the intestate. There was testimony from Demers and from Lyons himself that very soon after the warning from Demers this car was taken from the track on which it had been put, and instead of being " kicked " like the other cars was backed slowly and somewhat carefully upon track number five, and there left, near the switch which opened upon that track. Lyons testified that he did not kick it down because he knew from what he had been told that the brake was bad. And it might have been found upon the testimony of Lyons and that of Sunderland, the defendant's yard master, that the manifest purpose of putting the car into this place, near the head of track number five, was that the brake might be examined by an inspector before it should be put into

a train, and that it would be the duty of an inspector who was aware of these facts to make such an examination. All this was done openly and visibly, and the jury could find that it came under the immediate notice of the intestate and was known to him, and that it became his duty to examine the brake. Lyons testified that he knew that the car, in the position in which he had left it, was likely to be inspected, and that it would be the duty of the intestate to go up and look at it and inspect it, if he had been notified that it was out of order. One of the answers of this witness was, " If the car went down on five of course if the inspector was notified he would have to go down and look it over," which the jury might regard as giving much significance to the position of the car, if known to the intestate. The statement which the plaintiff testified that Atherly, a witness called by the defendant, made to him tends in the same direction, although this was not independent evidence, having been introduced merely to contradict the testimony of Atherly himself. And although Robertson denied that either he himself or the intestate was making any such examination, yet he also testified in parts of his testimony that the two were walking side by side and talking together and stopped upon the track at the same time without looking especially at the car itself, and in other parts of his testimony that he was a little in advance of the intestate; that the latter stopped and then he (the witness) turned and stopped too, and found the intestate facing the car within two or three feet of it; that if the intestate had heard that there was anything wrong about a car it would be his duty to inspect it; that to inspect a car he stood up and looked at it, and he presumed that the intestate was standing up and looking at it. The jury could have found also that Robertson, although called by the plaintiff, was a hostile witness and disposed to make his statements as unfavorable as possible for the plaintiff. It was undisputed that the course taken across the freight yard by Robertson and the intestate was such as to bring them directly to the rear of this car, and was exactly the course which the intestate would have taken if he had heard the shout of Demers to Lyons, had seen everything that followed, and was on his way to the car with the intention of examining the brake. His stopping behind the car and turning toward it so as to direct his gaze

toward the end of the car, the brake or the brake staff and its connections, might indicate that he had begun to make such an examination.

Taking this testimony together, in the opinion of the majority of the court the jury might draw the inference that the plaintiff's intestate, when the car was driven upon him by the impact against it of another car, was engaged in the line of his duty, doing the work which he was employed to do in the manner in which he was expected to do it, and so that he was in the exercise of due care, unless the circumstances were such as to show that he neglected to take some proper precaution or to make some proper provision for his own safety.

It is contended that he ought to have put a blue flag in front of the car, and there was evidence that this was required. But there was also evidence that this precaution was required and expected only in cases where an inspector had to go under or upon a car to do some work upon it, and not when he merely stopped to examine it. Moreover, he was and had been continuously in the company of Robertson; and the jury could find that he believed and was justified in believing that everything which he knew to have been said and done about this car was known also to Robertson; and there was evidence that when two inspectors were together in this way and one of them was examining a car, he had a right to rely upon the vigilance of the other. *Ahearn* v. *Boston Elevated Railway*, 194 Mass. 350. It could be found also, as we have said, that the very leaving of the car in this position indicated an intention that it should be examined, and it naturally might be expected that the conductor who had so left it for that purpose would not cause other cars to be kicked violently against it, especially when that conductor knew, as the intestate knew or could be found to have known, that it was the brake of the car that was defective.

Accordingly, although it is a close case, we are of opinion that the question of the intestate's due care was for the jury. *Mears* v. *Boston & Maine Railroad*, 163 Mass. 150. *Brady* v. *New York, New Haven, & Hartford Railroad*, 184 Mass. 225.

There was evidence of negligence in the conductor who was in charge of the switching and of the switching engine and train, for which the defendant is responsible. R. L. c. 106, § 71, cl. 3.

St. 1909, c. 514, § 127, cl. 3.   The mere fact of driving one car against another which the conductor knew might be undergoing inspection, could be found to be negligence, especially when the conductor knew that the car so driven had no brakeman upon it to check or control its speed, and, as the jury could find, no one was sufficiently near to it to be able to exercise such control before it would crash against the stationary car.

*Exceptions overruled.*