[No. 10045. Department One. February 2, 1912.]

THOMAS A. LYNCH, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY *et al.*, *Appellants*.[1]

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $23,895, reduced by the trial judge to $14,000, for injuries sustained by a locomotive engineer in a wreck, will not be disturbed on appeal as excessive, where he sustained a Pott's fracture of the ankle and a fracture of the skull and a cut across the nose and cheek, resulting in impaired sight and hearing, in traumatic neurasthenia, permanent lameness, weakness and loss of health, there being no way to measure his earning capacity with exactness.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In a personal injury case, an irrelevant instruction going only to the measure of damages is not prejudicially erroneous, where the verdict was reduced by the trial judge in a substantial degree.

DAMAGES—PERSONAL INJURIES—HUMILIATION—INSTRUCTIONS. In a personal injury case, an instruction authorizing the jury to consider injuries which render the plaintiff an object of pity or ridicule should not be given unless the injury is such as to shock the senses of fair-minded men or invite the unfeeling to ridicule.

[1]Reported in 120 Pac. 882.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered September 15, 1911, upon the verdict of a jury rendered in favor of the plaintiff, for personal injuries sustained by a railway engineer in a collision. Affirmed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellants.

*Hayden & Langhorne,* for respondent.

CHADWICK, J.—Plaintiff, forty-six years old, a railroad engineer, for twenty years in the employ of the defendant the Northern Pacific Railway Company, was injured in a collision occurring on December 8, 1910. The negligence of the company is admitted, and to use the words of defendants' counsel: "The only question to be determined is the extent of plaintiff's injuries and the amount to be recovered therefor."

Plaintiff suffered a Pott's fracture of the left ankle, and a fracture of the outer plate of the frontal bone of the skull, and it is possible that the inner plate was also fractured. He was cut across the forehead, the cut extending over the bridge of the nose and into the cheek, a part of which was gouged out, although the wound has so healed that the scar is hardly perceptible. He suffered a severe shock, and was confined to the house about two months, and has since been on crutches. The clinical effect of the injury, taking plaintiff's case as the jury did, is that his injuries have permanently impaired his health and strength, and to some extent his faculties. His left ankle is so stiffened that he cannot now, and in all probability never will be able to, perform manual labor "like the ordinary man;" that he cannot get on and off an engine with comfort; that time may improve his condition, but it is likely that he will have to walk with a cane the rest of his life; that he is suffering from traumatic neurasthenia, from which a recovery is hardly to be expected when the victim is past forty; that he has lost weight,

his normal weight being 170 to 175 pounds, whereas it was at the time of the trial 140 to 145. His memory has been somewhat impaired, while his sight and hearing are not more than fifty per cent of the normal. There is a watering and a slight twitching of one eye, and he suffers from head noises or rumbling sounds in the head. He complains of sleeplessness, and such weakness that the slightest physical exertion is said to cause profuse perspiration. There was some testimony tending to show that he had aged prematurely after the injury. The testimony of the physicians appointed by the court would tend to show that the neurasthenic condition will improve after this suit is terminated. Plaintiff was earning at the time of his injury from $140 to $170 a month. The jury returned a verdict for $23,895. This was reduced by the trial judge to $14,000. From a judgment for this amount, defendant has appealed, assigning that the verdict as amended by the court is still excessive, and that one of the instructions given by the court was erroneous and prejudicial.

We are not prepared to say that the verdict as amended is excessive. It is substantial, and may be larger than any of us would have been willing to return if we had been jurors. But the difficulty in this class of cases is that we have no test by which verdicts can be truly measured. If passion and prejudice are to be inferred from the mere size of the verdict, or it appears to be for such an amount as to seem penal rather than compensatory, the trial judge, who saw plaintiff and could more truly measure his condition and the probable consequences of his injuries, has exercised that discretion which many consider to be doubtful and all agree should be rarely exercised. Where the injury is such that it affects only the earning capacity of the party, so that compensation can be measured with some degree of mathematical exactness, this court has sometimes made conditional reductions of judgments. But in cases of this character where the earning capacity of the party injured is purely problematical,

we have quite consistently refused to interfere either with the verdict of the jury or the discretion of the trial judge. *Ronald v. Pacific Traction Co.*, 65 Wash. 430, 118 Pac. 311; *Reeks v. Seattle Elec. Co.*, 54 Wash. 609, 104 Pac. 126; *Jordan v. Seattle*, 30 Wash. 298, 70 Pac. 743; *Nelson v. Western Steel Corp.*, 61 Wash. 672, 112 Pac. 924.

The court instructed the jury:

"If you find that the plaintiff has sustained injuries which make him an object of pity to his fellow men and an object of ridicule to the thoughtless and unfeeling and deprive him of the comfort and companionship of his fellows, then the one causing such injury should respond in damages therefor."

The court then proceeded to give the jury a measure of damage based upon the actual injuries as shown by the evidence. That part of the instruction which we have quoted is assigned as error, and it is defended upon the authority of *Cole v. Seattle, Renton etc. R. Co.*, 42 Wash. 462, 85 Pac. 3, from the text of which it seems to have been taken. The objection to this instruction goes only to the measure of damages and, inasmuch as the verdict was reduced by the trial judge in a substantial degree, we hardly think we would be justified in holding that a new trial should be had, although we feel warranted in saying that we do not commend the practice of giving an instruction when no clear reason other than that it has been passed with approval in some other case is offered. We have frequently said that this class of cases speak for the most part their own law, and it is for that reason that care should be exercised to see that instructions bear some relevancy to the facts in the particular case. This court will not, and trial courts should not, assume that every person injured is an object of pity or ridicule, or will by reason of his injuries be deprived of the comfort and companionship of his fellow men, for it is not so. Nor was the instruction complained of held to be proper under the facts brought to this court in the *Cole* case. The extent of the court's holding was that, inasmuch as the jury saw the in-

jured party and heard him testify, its knowledge was such that, if the facts did not sustain the instruction, it must have rejected it; or as stated by the court: "We would not be justified in assuming they were in any way misled by the wording of the instruction." Unless an instruction is based upon evidence or an injury is disclosed that would shock the senses of fair-minded men, or invite the unfeeling to ridicule, an instruction like the one complained of should not be given. It can serve no purpose other than to invite the jury to wander in the field of speculation, and to put a burden upon a defendant which is penal rather than compensatory in its nature.

Judgment affirmed.

DUNBAR, C. J., CROW, PARKER, and GOSE, JJ., concur.