PUGET SOUND TRACTION, LIGHT & POWER CO. v. SCHLEIF.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1915. Rehearing Denied March 8, 1915.)

No. 2407.

1. STREET RAILROADS ⊚⇒117—INJURIES TO PERSONS ON TRACK—SUFFICIENCY OF EVIDENCE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

In an action against a street railroad company for injuries to a workman engaged in constructing a manhole in the street, who stepped onto the track in front of an approaching car, evidence *held* sufficient to take to the jury the questions of the negligence of the operators of the car and of plaintiff's freedom from contributory negligence.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 239–257; Dec. Dig. ⊚⇒117.]

2. STREET RAILROADS ⊚⇒ 93—INJURIES TO PERSONS ON TRACK—NEGLIGENCE—SPEED—WARNINGS.

It is negligence for a street car motorman to approach a street crossing, where workmen are at work close to the track, at a speed exceeding that permitted by ordinance and without sounding any warnings.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 195–200; Dec. Dig. ⊚⇒93.]

Care required of motormen, see note to Stelk v. McNulta, 40 C. C. A. 361.]

3. TRIAL ⊚⇒296—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.

It is not reversible error to instruct the jury that, if they believed a street car was traveling faster than permitted under an ordinance at the time it struck one working on the street, the burden of proof would be shifted to defendant to show plaintiff's contributory negligence, without

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

requiring a finding that the excessive speed was the proximate cause of the injury, where in the same instruction the court stated that the mere fact that the car was running at a prohibited speed was no evidence of negligence which was the proximate cause of the injury, and elsewhere charged that the fact that it was going at a prohibited speed was not the cause of the injury, if the jury found that the rate of speed was not the proximate cause of the injury, or that the plaintiff was contributorily negligent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. ☞296.]

4. TRIAL ☞260—INJURIES TO PERSONS ON TRACK—DUTY TO LOOK AND LISTEN—INSTRUCTIONS ALREADY GIVEN.

In an action for injuries to a workman on the street, struck by a street car, a charge that a person is required to make reasonable use of his eyes and ears, that is, he is required to look and listen for approaching cars when employed near the track, and to do such acts as a reasonably prudent man would do under like circumstances, sufficiently covers that branch of the case, and it was not error to refuse a charge requested by defendant on that issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

5. MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—INJURIES TO SERVANT—INDUSTRIAL INSURANCE—"EXTRAHAZARDOUS WORK."

A workman for a city contractor, engaged in constructing a manhole in the street near a railroad track, is not employed in an "extrahazardous work," so as to come within the scope of the state Industrial Insurance Act.

6. MASTER AND SERVANT ☞87½, New, vol. 16 Key-No. Series—INJURIES TO SERVANT—INDUSTRIAL INSURANCE—ESTOPPEL.

The fact that a workman had received two vouchers for monthly indemnity under the Industrial Insurance Act (Laws Wash. 1911, p. 345), which he did not execute, and on which he received no money, does not estop him from denying that he was within the terms of the act.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Action by Charles J. Schleif against the Puget Sound Traction, Light & Power Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff in the action in the court below was working for certain contractors constructing a water gate or manhole from the surface of a street in the city of Seattle to the water pipes of the city water system, which were laid underground. The defendant operated a double-track electric street railway upon that street. North-bound cars ran upon the east track, and south-bound cars upon the west track. The portion of the street on which the plaintiff was working, being that portion between the eastern track and the western curb of the street, had been excavated for a concrete base to a depth of about a foot. In constructing the manhole a circular excavation had been made in the unpaved portion of the street about 6 feet in diameter and about 3 feet deep. The most westerly portion of the rim of the excavation was about 18 inches from the easterly rail of the street car track, and the ends of the ties of the track extended over the hole. The north edge of the excavation was about on the south marginal line projected of the walk of a cross-street running east and west. For the convenience of pedestrians on that cross-street a temporary sidewalk had been constructed across the street on which the plaintiff was working by laying rough boards or planks directly upon the ground. There was evidence that the ends of some of these boards projected a few inches over the manhole. The dirt from the excavation had

been thrown upon the southerly side of the hole. The manhole was being constructed with brick and mortar. It was the plaintiff's duty to wheel the bricks in a wheelbarrow from the place where they were piled, and dump them near the hole, then hand them down to the mason constructing the manhole as he needed them. In doing this work the plaintiff generally stood at the north of the center of the hole on the temporary plank crosswalk. He testified that the line of his duty was "around the hole." There was no occasion for him to cross the track in going for or bringing bricks. At 10:20 in the forenoon on the day of the accident he had wheeled a load of brick to the excavation, and was standing north of the center of the hole, and at a point where a car approaching from the south on the easterly track could easily pass him, when he suddenly jumped or stepped upon the track at a time when a car approaching from the south on the easterly track was not more than 10 or 12 feet distant. He could have seen the car, had he been looking, at a distance of at least 600 feet. He testified that he was engaged about his work, and was not looking or thinking about the car, and did not hear the car approaching. He was struck by the car and sustained serious injuries. He testified that he was rendered unconscious, and had no recollection that he was upon the track at the time when he was struck; but the testimony of other witnesses indicates that, either because one of the planks of the crosswalk tipped as he stepped upon the end thereof, or for some other reason, he suddenly stepped or sprang upon the track.

James B. Howe and A. J. Falknor, both of Seattle, Wash., for plaintiff in error.

Geo. D. Emery, of Seattle, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The defendant contends that it was entitled to a directed verdict in its favor, both on account of lack of evidence of its negligence and the proof of the plaintiff's contributory negligence. The negligence of the defendant alleged in the complaint was its failure to give the plaintiff proper warning of the approach of the street car, and the operation of the car at 15 miles per hour, when its speed was limited by ordinance to 12 miles per hour. There was evidence that the car was going at from 15 to 20 miles an hour, and that no bell was rung until the plaintiff was seen on the track, and at a time when the car was within 12 feet of where he stood. In view of the testimony, we do not think it should be said, as a matter of law, that the defendant was not guilty of negligence, or that the plaintiff was guilty of such contributory negligence as to bar his right of recovery.

[2] If it were true that the street car was approaching at a rate of speed prohibited by the ordinance, and the men who were working at the manhole were plainly visible to the conductor, the circumstances were such that a jury might properly say that ordinary care required the conductor to give a timely signal of the approach of his car, and that he should take into account the fact that one of the group of workmen engaged in work around the manhole and in proximity to the track, without such warning, might inadvertently step upon the track, or so near thereto as to be injured by the passing car. Although courts have held that there is no obligation resting upon a motorman to sound a gong, unless some extraordinary exigency requires it, it has been held, and very properly, we think, that the approach to a street crossing gives rise to such an exigency. And it has been held that proof of the

running of a street car at an excessive speed across a public street, or of failure to give proper warning of its approach, is evidence tending to show negligence. Pierce v. Lincoln Traction Co., 92 Neb. 797, 139 N. W. 656; Indianapolis St. R. Co. v. Bordenchecker, 33 Ind. App. 138, 70 N. E. 995. In Peterson v. Seattle Electric Ry. Co., 71 Wash. 349, 351, 128 Pac. 650, 651, it was said:

"If a motorman assumes to drive his car at an excessive speed, he cannot be excused from his duty to ring his bell and give such warning as is commensurate with the increased hazard, for it is the measure of due care."

In harmony with this view of the law the trial court instructed the jury that the defendant company could not recklessly run its car at a speed to exceed the limits of the law without ringing a bell or sounding a gong, irrespective of the plaintiff's employment near its track; that the defendant had the right to rely on the fact that the street along the line of its railway would not be used by persons in any other than a reasonable and usual manner, taking into consideration the improvement that was being made at the time near to its track, and that the company was required to exercise reasonable care and caution, such as an ordinarily prudent man would under similar circumstances, taking into consideration the improvements that were being made there and the dangers that were apparent by reason of the employment of the plaintiff and others in close proximity to its track; and that the plaintiff had the right to rely on the fact that the defendant would not run its car faster than the limit of speed required by the ordinance, and that the motorman operating the car would give the usual warning by ringing a bell or sounding a gong to advise plaintiff of the approach of the car.

In Hanley v. Boston Elevated Railway, 201 Mass. 55, 87 N. E. 197, the plaintiff was one of a gang of four engaged in repairing a gas main alongside the defendant's street railway. The court said:

"When viewed in the light of common experience, the jury could say that the plaintiff's knowledge of the attendant circumstances would not lead him conclusively to anticipate that, if he slipped and in falling on the spur of the moment grasped the rail to prevent dropping into the trench, an on-coming car, whose approach he had no reason to apprehend, because no warning had been given, might cut off his fingers. * * * Nor can it be said, as matter of law, that there was no evidence of the defendant's negligence. If neither the defendant's flagman, nor its motorman, nor its conductor, could be charged with knowledge that the pipe had become slippery, the flagman knew, and the others either knew, or could have been found to have known, of the excavation, and that the men were at work in the trench in the ordinary way making the necessary repairs. The usual warning from the flagman might have given the plaintiff time to choose between jumping into the trench, and reaching over and grasping the rail at the peril of losing his hand. In such a situation the mind reasons instinctively, and it is not outside the pale of common knowledge that even a few seconds might have saved the plaintiff from injury. Or if, instead of running at a speed which could have been found upon conflicting evidence to have been from 18 to 20 miles an hour, the motorman or conductor had slackened the speed of the car, the plaintiff might have recovered his footing and have released his grasp before the car passed over."

The defendant relies upon Kiely v. Seattle Electric Co., 78 Wash. 396, 139 Pac. 197. The court had under consideration in that case the question of the contributory negligence of the plaintiff, and said:

"Although respondent was rightfully in the street, it was his duty to exercise reasonable care to learn of the approach of cars; a turn of the head and a glance of the eye would have been sufficient, especially when a signal was given by the ringing of a repeating gong."

In the sentence last quoted is found the feature which distinguishes that case from the case at bar. If in the present case it had been established by the evidence that a gong had been sounded on the approaching car in time to give warning, a very different case would have been presented.

[3] It is assigned as error that the court instructed the jury as follows:

"You are instructed, however, that if, by a fair preponderance of the evidence, you believe that the car was running more than 12 miles an hour at the place of the accident, the burden of proof, would by such act be shifted to the defendant to show by a fair preponderance of the evidence that the injury, if one was sustained, was the result of contributory negligence on the part of the plaintiff, and that such negligence was the proximate cause of the injury, and without which it would not have happened."

It is said that this instruction was erroneous, for the reason that in law the burden could not be cast upon the defendant until the jury had not only found that the car was traveling at an excessive speed, but that such excessive speed was the proximate cause of plaintiff's injury. But in the same instruction the court charged the jury that:

"The mere fact that the plaintiff was injured is no evidence of liability on the part of the defendant, nor is the fact that the car was running more than 12 miles an hour evidence of negligence which was the proximate cause of the injury."

And again the court charged the jury that:

"The fact that the car was going at a greater rate of speed than 12 miles an hour was not the cause of the injury, if you find from the evidence that such rate of speed above 12 miles an hour was not the proximate cause of the injury, or if you find from the evidence that the plaintiff was guilty of contributory negligence."

And elsewhere in the charge the jury was plainly instructed that the running of the car at an excessive speed, together with the failure to give an appropriate signal of its approach, might be regarded as negligence. We are not convinced, therefore, that there was reversible error in the portion of the charge which was singled out by the defendant in its exception.

[4] Error is assigned to the refusal of a requested instruction on the subject of the duty of the plaintiff to use his senses, his eyes and his ears, especially when working in or about a place where a collision with a car was likely to occur. But, on examining the instructions, it is seen that the court charged the jury sufficiently on that branch of the case as follows:

"And a person is required to make reasonable use of his eyes and ears; that is, he is required to look and listen for approaching cars when employed near the track, and to do such acts as a reasonably prudent man would under like circumstances."

[5] One of the defenses pleaded was that the plaintiff was employed in extrahazardous work, an employment which comes within the scope

of the state Industrial Insurance Act, and that because of the provisions of that act he could not recover in the action, and that prior to bringing the present action he had made his election to take under that act, and had presented his claim to the state and had received on account thereof two state warrants for $30 each. Error is assigned to the instruction wherein the court charged the jury that under the evidence the act did not apply and that the defense so pleaded should be disregarded. There was no error in that instruction. Meese v. Northern Pac. Ry. Co., 211 Fed. 254, 127 C. C. A. 622.

[6] Nor was it shown that the plaintiff had received warrants from the state. What he did receive were two vouchers for a monthly indemnity, which he did not execute and upon which he received no payment. Nothing that he did in that matter should be held to estop him from prosecuting the present action.

We find no error for which the judgment should be reversed. It is accordingly affirmed.