terminate given, all within the year. The mere fact that the contract provided for a renewal beyond a year, in the absence of notice to terminate, does not make the contract impossible of performance within the year. It follows therefore that as the defendant did not give the notice to terminate provided for by the contract, the plaintiff was entitled to payment of the $256.50 in advance at the beginning of the new year, August 18, 1905. It continued these services beyond that date, and these services were accepted by the defendant until September 14, 1905, when it notified the plaintiff to discontinue. The defendant was allowed to introduce in evidence against the objection of plaintiff a former written contract between the parties covering the period from August 6, 1903, to August 6, 1904. This document was immaterial to the issues, and should have been excluded.

For these reasons we think the judgment should be reversed with costs to appellant to abide the event and a new trial granted. All concur.

---

### WILKINS v. NEW YORK TRANSP. CO.

(Supreme Court, Appellate Term. December 11, 1906.)

MUNICIPAL CORPORATIONS—USE OF STREETS AS HIGHWAYS—INJURY TO PEDESTRIAN—CONTRIBUTORY NEGLIGENCE.

     In an action for injuries received by a pedestrian on a street struck by an automobile, evidence examined, and *held* insufficient to show freedom from contributory negligence.

Appeal from City Court of New York, Trial Term.

Action by Albert Wilkins against the New York Transportation Company. From a judgment in favor of plaintiff, after a trial before the court and a jury, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, FITZGERALD, and DAVIS, JJ.

Arthur K. Wing, for appellant.

Herman C. Kudlich, for respondent.

FITZGERALD, J. The plaintiff, a man of 73 years of age, on March 13, 1903, in attempting to cross West Broadway at Barclay street from west to east, and when about half way across, and while surrounded by a crowd of people, was injured by one of defendant's automobiles. Plaintiff testified, in substance, that he was knocked down from the left side, and fell on his head; that he did not see any wagons or automobiles in front, and did not see the machine that struck him until after the accident; that he did not look for anything except the people in front of him. There is not a line of testimony in the case which showed that he made any attempt to avoid the various vehicles which at the time filled the street. It was so crowded that the police officer on duty at that corner stated:

"I had to pick my way across the street when I crossed over."

Two witnesses to the occurrence were called for the plaintiff. One of these, Oscar Richert, said he saw the automobile hit the plaintiff and stop. It was moving and stopped instantly, and plaintiff was picked up in front of it. He further testified that:

"When I first saw them Mr. Wilkins and the automobile were just about coming together."

Louis Smith, the other witness, stated that he was standing on the northwest corner of West Broadway and Barclay street and saw the automobile coming down West Broadway, going fast; that at the time he saw the automobile it was at Park Place, one block above Barclay, and the plaintiff was about the middle of West Broadway walking very slowly; that after the accident the automobile did not stop, but continued on its way until it reached Vesey street, one block below, when it turned around and came back. This is at variance with the testimony of plaintiff and the witness Richert. The former testified that when he arose after the accident, "the car was nearer to me than five feet," and the latter that the automobile stopped instantly. The driver of the automobile testifies that as he was approaching Barclay steet he saw the plaintiff come from between a street railway car and a team that was behind; that at this time there was also a team of green horses plunging. It appears that the plaintiff looked toward these horses, when the chauffeur, according to his story, to avoid an accident, applied the brake, and immediately reversed the machine, which he further testified was at a standstill when plaintiff ran against it, staggered back two or three steps, and fell. From the foregoing résumé of the testimony it would appear that the plaintiff failed to sustain the burden of showing the absence on his part of contributory negligence. In Fuller v. Dederick, 35 App. Div. 95, 54 N. Y. Supp. 595, Herrick, J., said:

"It seems to me impossible that, if she had been using her eyes and ears, as a person should do in crossing a city street, she should not have seen the horse and wagon approaching, and that, if she had been so using her senses, she would have known of its approach before it struck her, as she insists, or before she ran into it as the evidence seems to indicate. I am therefore of the opinion that, so far from showing the absence of contributory negligence, the evidence shows its presence, and that therefore the judgment and order should be reversed."

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.