[No. 9875. Department Two. October 27, 1911.]

JOHN MINOR, *Respondent*, v. CHARLES C. STEVENS, *Appellant*.[1]

TRIAL—VERDICT—SPECIAL FINDING — DETERMINATION OF ISSUES—MUNICIPAL CORPORATIONS—USE OF STREETS—COLLISION WITH AUTOMOBILE—CONTRIBUTORY NEGLIGENCE. A verdict for injuries sustained by a pedestrian, run down by an automobile on a dark, rainy morning, cannot be sustained where there was evidence tending to show that the horn was sounded and the muffler cut out, although the plaintiff testified that he did not hear or see the machine, having an umbrella well down over his head, and the jury, to an interrogatory as to whether the plaintiff could in the exercise of his ordinary faculties have heard the horn or seen the lights by glacing in that direction, answered "we do not know;" since the issue as to contributory negligence was undetermined (DUNBAR C. J., dissenting).

MUNICIPAL CORPORATIONS — USE OF STREETS — EVIDENCE — RES GESTAE—CONDUCT AFTER ACCIDENT. In an action for injuries sustained by a pedestrian run down by an automobile, the conduct of

[1]Reported in 118 Pac. 313.

the chauffeur subsequent to the accident is relevant only so far as it is part of the *res gestae.*

MASTER AND SERVANT—INJURY TO THIRD PERSON—RELATION—EVIDENCE—ADMISSIBILITY. In determining whether a chauffeur was the servant of the owner of an automobile, or a lessee, the method and manner of his payment is material, where there is a dispute as to the facts.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered December 16, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian run down by an automobile. Reversed.

*H. W. Lueders,* for appellant.

*Frank C. Neal* and *Davis & Neal,* for respondent.

CHADWICK, J.—Plaintiff sues to recover damages alleged to have been suffered because of the negligence of a chauffeur in the employ of the defendant, who is engaged in the business of carrying passengers for hire. Several defenses were interposed; among others, that of contributory negligence. It appears that, about four o'clock in the morning, when it was raining and sleeting, plaintiff was on his way to his work, and while crossing a street in the city of Tacoma, was run down by respondent's automobile, and sustained the injuries upon which this action is predicated. Respondent, who had his umbrella well down over his head, testifies that he did not see or hear the machine, although there is testimony tending to show that the horn was sounded and that the muffler was cut out. As we view the case, a further review of the testimony is unnecessary. Although the defense of contributory negligence would have been covered by the general verdict, the trial judge nevertheless submitted a number of special verdicts, among them the following: "Could the plaintiff, in the exercise of his ordinary faculties, have heard the horn or noise of the machine, seen the lights, and observed the approaching vehicle by glancing in the direction from whence

the noise and lights of the automobile came?" to which the jury answered: "We do not know." The court instructed the jury quite fully on the issue of contributory negligence, one of his instructions being:

"It is the duty of a pedestrian traveling in public streets of the city to reasonably exercise for his personal safety the faculties with which he is endowed by nature, for self protection, and if he fails so to do and is by reason of such failure injured, he has at least contributed by his negligence to his injury, if it has not wholly resulted therefrom, and cannot legally recover anything from any one on account of such injury."

It is hardly possible to lay down a fixed rule in this class of cases, for, as has been said, negligence is a relative and comparative term, and each case must depend upon its own circumstances. Yet, nevertheless, there is a duty on all parties to exercise reasonable care to prevent accidents and collisions. Babbitt, Law of Motor Vehicles, par. 272; Berry, Law of Automobiles, § 171. Although a higher degree of care rests upon the driver of a vehicle because of the dangerous instrumentality which he controls, yet it is universally held that the right to the street lies in both parties, and their duty to exercise due care is reciprocal whatever the character of the vehicle may be. See, *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458, where the authorities are collected.

In *Hannigan v. Wright*, 5 Penn. (Del.) 537, the court said:

"A traveler on foot has the same right to the use of the public streets of a city as a vehicle of any kind. In using any parts of the streets all persons are bound to the exercise of reasonable care to prevent collisions and accidents. Such care must be in proportion to the danger or the peculiar risks in each case. It is the duty of the person operating an automobile, or any other vehicle, upon the public streets of a city to use ordinary care in its operation, to move it at a reasonable rate of speed, and cause it to slow up or stop if need be, where danger is imminent and could, by the exercise of reasonable care, be seen or known in time to avoid accident. Greater caution is required at street crossings and in the more

thronged streets of a city than in the less obstructed streets in the open or suburban parts. There is a like duty of exercising reasonable care on the part of the pedestrian. The person having the management of the vehicle and the traveler on foot are both required to use such reasonable care as the circumstances of the case demand; an exercise of greater care on the part of each being required where there is an increase of danger. The right of each must be exercised in a reasonable and careful manner, so as not unreasonably to abridge or interfere with the rights of the other; and both are bound to the reasonable use of all their senses for the prevention of accident, and the exercise of all such reasonable caution as ordinarily careful and prudent persons would exercise under like circumstances. . . . It is true that a person crossing a public street of a city is required to make a reasonable use of all his senses in order to observe an impending danger, and if he fails to do so and is injured by reason of such failure, he is guilty of such negligence as will prevent any recovery for the injury sustained. Such reasonable use of the senses, however, means such use as an ordinarily prudent and careful person would have used under like circumstances. And so in the case before you, if the plaintiff saw the automobile before it struck her, or by the reasonable use of her senses could have seen it in time to avoid the injury, she could not recover. But if she could not, under the conditions and circumstances existing at the time of the accident, by the exercise of reasonable care have avoided it, she would not be guilty of such negligence as would defeat her right to recover."

This we conceive to be a fair statement of the law. In *Wilkins v. New York Transp. Co.*, 101 N. Y. Supp. 650, where the facts approximate those in the case at bar, it was held that the pedestrian was in duty bound to use his senses, if, under the circumstances, their exercise would have prevented the accident. See, also, Huddy, Automobiles, p. 140. It will thus be seen that the issue of contributory negligence was left undetermined by the jury, and no judgment can be justly entered upon the verdict so long as it appears that plaintiff might, by the exercise of reasonable care or the "exercise of his ordinary faculties," as the special verdict puts it, have prevented the accident.

In the event of a new trial, we think an interrogatory pro-
pounded to, and answered by, the witness Maud Heney, and
to which an exception was taken, should be excluded.    The
conduct of Frago, the chauffeur, subsequent to the accident
would not be relevant or material, except in so far as it is a
part of the *res gestae* and might tend to throw light on the
act which is charged to be negligent.

The principal defense urged by appellant was that Frago
was not a servant but a lessee of his machine, and in no way
subject to his control.    We find no error in the order of the
court denying a nonsuit on this ground.    It was a question
for the jury.    *Kneff v. Sanford*, 63 Wash. 503, 115 Pac.
1040; *Delano v. La Bounty*, 62 Wash. 595, 114 Pac. 434;
*Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329.    But in
submitting the case to the jury, the court said that "the man-
ner, the method, and means by which he [the chauffeur] re-
ceived compensation for his work is immaterial.    The rela-
tionship of master and servant is determined by the right of
the master to control the servant, and you may take into con-
sideration any evidence showing that the driver was, at the
time of the accident complained of, subject to be discharged
by him for disobedience to orders, or misconduct."    This is
an inaccurate statement of the law.    If the jury should find
from the evidence that Frago was the servant of appellant,
and under his direction and control, then the manner, method
and means by which he received compensation might become
immaterial.    But in determining that question upon a dis-
puted state of facts, the method and manner of his payment is
material testimony and should have been submitted to the jury.
Other errors are assigned, but we find no merit in them.

For the reasons suggested, this case is reversed and re-
manded for a new trial.

ELLIS, MORRIS, and CROW, JJ., concur.

DUNBAR, C. J. (dissenting)—If I understand the majority
opinion, the judgment is reversed because the jury, in re-

sponse to the following special interrogatory: "Could the plaintiff, in the exercise of his ordinary faculties, have heard the horn or noise of the machine, seen the lights, and observed the approaching vehicle by glancing in the direction from which the noise and lights of the automobile came?" answered: "We do not know;" on the theory, as stated, that the answer left the issue of contributory negligence undetermined by the jury. This conclusion I think is unwarranted. There was testimony offered on the subject of contributory negligence, and it is conceded that the jury was fully and properly instructed in that regard. It is not questioned by the majority that there was sufficient testimony to sustain the verdict, and if the special interrogatory had not been propounded, as I understand the opinion, the judgment would be affirmed. In the first place, the interrogatory is so mixed in its terms that the jury could not intelligently answer it. Of course the plaintiff could not have heard the noise of the machine by glancing in its direction, nor is a pedestrian required, in the exercise of his ordinary faculties, to glance up and down or across the street in anticipation of the approach of an automobile. The question, therefor, which was propounded assumed a duty which the law does not impose upon the pedestrian, and ought not to have been submitted.

I have no fault to find with the quotations in the opinion regarding the duty of pedestrians. They simply announce the doctrine that a pedestrian must exercise such care as, under the circumstances is reasonable. If a pedestrian hears the horn of an automobile, he ought to recognize the signal as one of danger and govern himself accordingly. Or, if he sees an automobile approaching in his direction, it is a notification of danger. It might even be his duty, if he were turning a sharp corner and suddenly precipitating himself upon the street in a place where the driver of an automobile could not reasonably see him, to look to see if there was anything that would endanger him. But in this case the respondent was maintaining a uniform direction, crossing

the street in a direct line with the walk upon the side of the block he had traversed. Under such circumstances, if it is held to be the duty of the pedestrian to glance around for the purposes of discovering automobiles before he can recover, the cross-walks of the streets of cities will become death traps to the unwary travelers. In this case the automobile was traveling in the street parallel to the walk traveled by the pedestrian, and, while the respondent was pursuing his un- deviating way, it turned abruptly to cross the walk he was upon, and ran him down. Under such circumstances the driver was guilty of gross negligence, and there was no room for the interrogatory proposed.

Another conclusive answer to the opinion is that it is the settled law of this jurisdiction that contributory negligence is an affirmative defense. The burden is, therefore, upon the defendant to prove it; and when it is shown by an answer to the interrogatory that the jury did not know whether con- tributory negligence was attributable to the plaintiff or not, the defendant has failed to sustain a defense on that issue. It is evident that the majority has seized upon the wrong horn of the dilemma.