[No. 12548.   Department One.   August 11, 1915.]

N. L. TOOKER et al., *Respondents*, v. WILLIAM D. PERKINS et al., *Appellants*.[1]

APPEAL—REVIEW—VERDICT. Where there is conflict in the evidence, the facts are for the jury, and unless physically impossible or naturally improbable so that reasonable minds could not differ thereon, the supreme court accepts as conclusive the fact necessarily resolved by the jury in respondent's favor.

MUNICIPAL CORPORATIONS—STREETS—NEGLIGENT DRIVING—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS. In an action for injuries sustained by pedestrians struck by an automobile, in the nighttime, where plaintiffs stopped and looked in all directions before starting to cross a street in the middle of the block and saw no car approaching and were struck by a car carrying insufficient lights, which it was impossible to see any distance, and the plaintiffs did not see the car until about six feet away, it is proper to refuse an instruction that plaintiffs were guilty of contributory negligence in crossing the street in the middle of the block in case the view was unobstructed and the car carried ordinary lights; since the instruction was not based upon the evidence.

SAME. In such an action, evidence to the effect that, when plaintiff first saw the car, it veered to the east and he assumed it would pass to the east of him, when it suddenly veered to the west, does not warrant an instruction based on the fact that plaintiff assumed that the car would pass down an east driveway contrary to the law of the road, since there was no evidence of any such assumption on his part.

SAME—STREETS—NEGLIGENT USE—CONTRIBUTORY NEGLIGENCE—ACTS IN EMERGENCY—QUESTION FOR JURY. Where a rapidly approaching automobile, but a few feet distant, first veered to the east, and then suddenly veered to the west, striking the plaintiffs, head on, before they could move, the question of their contributory negligence in endeavoring to get out of the way in the emergency is for the jury.

SAME—STREETS—NEGLIGENT USE—FAILURE TO SOUND HORN—QUESTION FOR JURY. In an action for personal injuries in running down pedestrians on a dark night, with an automobile going 25 miles an hour, having no headlights as required by ordinance, whether defendant was negligent in not sounding a horn in the middle of a dark block, is a question for the jury, the ordinance requiring the

[1]Reported in 150 Pac. 1138.

sounding of warning where danger exists to any person in or upon the street.

SAME—STREETS—NEGLIGENT USE—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS. In an action for personal injuries sustained by pedestrians, struck by an automobile, an instruction that the plaintiffs were guilty of contributory negligence in crossing the street in the middle of the block, in case they could with reasonable diligence have discovered the approaching car with its side lights burning, is properly refused where it ignored evidence that the car was not sufficiently lighted and could not have been seen at that distance, and that plaintiffs looked but could not see the car until the car, approaching at twenty or twenty-five miles an hour, was within ten or fifteen feet from them; especially where other instructions stated the law as favorably to the appellants as it could be.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $4,000, reduced by the trial court to $3,000, for severe cuts, bruises, and personal injuries sustained by a man and wife, causing much pain and suffering and permanent injuries to the wife's back, knee, and nervous system, when they were struck by an automobile going twenty or twenty-five miles an hour, and thrown and dragged thirty or forty feet, although seemingly large, will not be set aside on appeal as excessive where it cannot be said to be the result of passion or prejudice or any illegal influence.

Appeal from a judgment of the superior court for King county, Albertson, J., entered July 3, 1914, upon the verdict of a jury rendered in favor of the plantiffs, in an action for personal injuries sustained by pedestrians struck by an automobile. Affirmed.

*Kerr & McCord*, for appellants.

*Walter S. Fulton* and *Irving T. Cole*, for respondents.

HOLCOMB, J.—Respondents brought their action jointly against appellants, for damages for personal injuries in the sum of $4,700, upon allegations of negligence in operating an automobile owned and operated by appellants. There was a verdict for respondents for $4,000, which was reduced to $3,000 by the trial court on motion for new trial. Respondents' recovery was based upon the presentation by them, for the consideration of the court and jury, of substantially the following facts: At about 6 o'clock p. m., on November 23,

1913, respondents alighted from a street car on Broadway at East Thomas street, Seattle, and proceeded westerly on the north side of East Thomas street to the east side of Harvard avenue; then, instead of crossing Harvard avenue at its intersection with East Thomas street, they turned north and proceeded along the east side of Harvard avenue a distance of about 120 feet to a point about opposite, or a little north of, the north point or apex of a triangular parking strip which was situated in the middle of Harvard avenue, commencing at its intersection with East Thomas street and extending northward about 108 feet. The parking strip is about 39 feet wide at its south end, which is the north line of East Thomas street at its intersection with Harvard avenue. There is a driveway on each side of the parking strip about 18 feet wide. South-bound traffic passes down the west driveway, and north-bound goes up the east driveway. The width of Harvard avenue is about 75 feet, including the parking strip in its center, which, as said, runs to a point about 108 feet to the north. One block north of East Thomas street is East Harrison street, running parallel with East Thomas, the distance between the two being about 277 or 320 feet, there being some discrepancy in the testimony.

At about the same time that respondents undertook to cross Harvard avenue as described, appellants' automobile was being driven south along Harvard avenue between East Harrison and East Thomas streets. The automobile was in charge of one Nelson, appellants' chauffeur, who had had seven years' experience, and there were in it at the time, besides Nelson, Mrs. Perkins, one of appellants, her son, and three other persons. A little north of the apex of the parking strip, on the west side of Harvard avenue, is the Roycroft apartment building. In front of this building, at the time in question, there was an automobile standing motionless. The night was very dark and it had been raining but, according to respondents' testimony, was not raining at the time, and they did not put up their umbrella, but carried it closed.

They proceeded across Harvard avenue somewhat diagonally, bearing slightly to the north. When within about 10 feet of the west curb of Harvard and 12 or 15 feet north of the apex of the parking, they, for the first time, observed the large automobile (appellants') bearing down upon them from the north, at a distance from them of only six or eight feet, and at a speed of about 25 miles an hour, and without any warning to them other than the "rumbling sound" of the car. According to their testimony, respondents, when about to step off the east curb of the street to cross the street, stopped and looked both ways up and down Harvard avenue, for any approaching automobile, but saw none whatever except the one standing in front of the Roycroft. Mrs. Tooker said she remembered distinctly looking "past her husband, who was on her right, when they stopped, as she was always scared to death of automobiles and always looked both ways." When they first saw appellants' automobile it had just swerved to the east around the standing automobile in front of the Roycroft. It then suddenly swerved to the right again. Mr. Tooker was nearest the car on the right side, his wife holding his left arm. The oncoming car being so nearly upon them, he tried to swing her to the left and forward in an effort to thrust her away from the car. At the same instant the car struck them both. The chauffeur sat on the right side of the machine, and respondents were struck by the front of the machine. Mr. Tooker was rolled or dragged on the pavement a distance of 30 or 40 feet, and his wife was knocked prone to the street and rendered insensible.

The owner of the machine which was standing in front of the Roycroft was sitting just inside the entrance to the Roycroft, beside the front window, and heard a loud crash which caused him to think his machine had been run into by another, and he immediately went out into the street. He saw the automobile of appellants. He saw that its headlights were not lighted and that small oil side lamps were lighted

but threw no light out to any distance in front. He said these oil lamps were smeared with smoke, dirt, and soot so that the lights would not, and did not, extend outside the glass fronts of the lamps; that they could not be seen; that they "were rotten, no lights at all;" "if standing 10 or 15 feet away and that car was going any speed at all and you instantly looked up, you could not see them [the side lights]." He had had nineteen years' experience in driving automobiles. He had driven cars for the purpose of testing their speed, their mechanism, and their power of stopping and starting, and had driven Packard machines like appellants'. He testified that if this machine had been running at a speed of four to six miles an hour, it could have been stopped almost instantly, within two feet; if it had been running at a speed of not to exceed six miles an hour, there would have been no noise from a collision with a person; if running at the speed of about six miles an hour, it would have been utterly impossible to have knocked one of respondents insensible and carried the other along crosswise in front of the car a distance of 30 or 40 feet. He also found one of the headlights battered by an impact with some object, and driven back against the radiator. He testified that, in his opinion, the car must have been running at not less than twenty miles an hour. There was also other automobile expert testimony that a car, knocking down repondents and throwing one of them across the front of the machine, and carrying one of them a distance of 30 or 35 feet before the car was brought to a standstill, the operator having done everything that a competent operator of a car could do, must have been running at least 30 to 35 miles an hour. If running six miles an hour, it could have been stopped within two feet; if at 12 miles an hour, in from two to five feet. If running at 12 miles an hour, it could not have gone 35 to 40 feet before being stopped by a competent operator, doing all he could. If running four to six miles an hour when coming

in collision with two persons, it would make no noise, but its impact would be more like a shove than a knock.

An ordinance of the city of Seattle, No. 30,906, was pleaded and introduced in evidence, which provides, among other things, that

"No person shall operate or use any automobile  .  .  . upon the streets, avenues, alleys, parkways, or other public places in the city of Seattle, without having attached thereto a bell, gong, horn, or other signal device in good working order capable of producing an abrupt sound sufficiently loud to be heard above the noise of traffic, and to serve as an adequate warning of the approach of such automobile and of the danger to any person caused thereby.  No person using or operating any automobile  .  .  .  shall fail to sound such signal device as a warning when danger exists to any person in or upon any of the streets, avenues, alleys, parkways, or other public places by reason of the approach of such automobile," etc.

There was also an ordinance, No. 30,263, pleaded and introduced in evidence, providing as follows:

"It shall be unlawful for any person to ride, drive, or propel any automobile  .  .  .  over or across any street, park, drive or other public place in the city at an excessive or unreasonable rate of speed or at such rate of speed as will endanger the life, limb, or property of pedestrians using such streets or other public places and in no event at a rate of speed greater than twenty miles an hour."

There was also an ordinance, No. 28,563, pleaded and introduced in evidence, which provides, among other things, that automobiles, etc., operated on the streets between the hours of sunset and sunrise shall have fastened to the front thereof at least two white lights of sufficient candle power to be visible for a distance of at least one hundred feet in front of such automobile or other motor vehicle.

Respondents' testimony showed that, when the automobile struck them, Mr. Tooker, being nearest it, tried to swing Mrs. Tooker forward and to the left in an effort to release her and get her away from the car.  At the same instant, the

car struck them both. Mr. Tooker was thrown flat on his
stomach on the ground, and then rolled and bumped along
by the car for about 45 feet before it was brought to a stop.
He at once picked himself up and rushed back to his wife,
whom he found about 35 feet from the rear end of the car,
lying unconscious on the ground, with her head badly cut,
blood flowing from the wound, and her face, hair, hat, and
part of her clothing covered with blood. Mrs. Tooker was
carried in an unconscious condition to her apartments in
the Roycroft, and remained in such condition until after a
physician had arrived and had taken six or seven stitches
in the cut on the left brow or temple, when she partly re-
gained consciousness for about twenty minutes, and then
lapsed again into unconsciousness. She spit considerable
blood the night of the accident and was confined to her bed
two weeks lacking one day. The cut on her head was two
and one-half to three inches long. Her left shoulder was
sprained and bruised. There were bruises on the right side
of her chest and a sprain of her left knee, a concussion of
the brain, a blackening of the left eye, and a partial paralysis
of the left eyelid and brow, due to a cutting of the nerve
by a gash in her brow, continuing more or less to the date
of the trial. As a result of the collision she had lost in ap-
petite and weight, has a noticeable scar from the wound, has
backaches that she never had before the accident, is in a
nervous condition, and has a stiffening of the left knee, mak-
ing it difficult for her to go up and down stairs or to alight
from a street car. During the two weeks she was confined
to her bed, she was stiff and sore all over and suffered pain.
N. L. Tooker's spine, shoulders, limbs, and body were badly
wrenched and bruised. He suffered great pain therefrom,
and after the second day it was almost impossible for him
to get up and down out of a chair. This continued for about
a week. His left knee was badly bruised and skinned and
did not heal for about three weeks. The bruises on his right
arm remained for two weeks, and his back was black and

blue across the spine and shoulder blades for about two weeks, causing constant pain. The physician's charge for his services was $40; the expense of a nurse was $25; medicine and incidentals for Mrs. Tooker, $10; a total of $75. Mr. Tooker had clothing of the value of about $85 destroyed by the accident, and Mrs. Tooker had clothing of the value of about $60 destroyed. Two hundred dollars was claimed by respondents as damages for medical and surgical expenses paid out and clothing destroyed, $500 for injuries to N. L. Tooker, and $4,000 for injuries to Mrs. Tooker. The appellants denied the allegations of negligence contained in respondents' complaint, and affirmatively alleged contributory negligence.

Much of the argument of appellants assumes that certain facts tending to show contributory negligence on the part of respondents were undisputed. Since the verdict of the jury, we must consider the facts resolved as presented by the respondents. Where there is conflict in the evidence, the facts are for the jury and, unless physically impossible or naturally improbable so that reasonable minds could not differ thereon, we are compelled to accept as conclusive all those facts which must necessarily have been resolved by the jury in respondents' favor.

It is contended that the court erred in refusing to instruct the jury that, when the plaintiffs attempted to cross Harvard avenue near the center of the block in the nighttime, when the rain was falling, if the jury should find that the view in the direction from which the car was coming was unobstructed, and that the machine carried the ordinary side lights, and that such lights were lighted, plaintiffs themselves were guilty of such contributory negligence as would prevent a recovery. In support of this contention they cite *Harder v. Matthews*, 67 Wash. 487, 121 Pac. 983, and they argue that, upon the undisputed facts in the case at bar, it falls within the principle of that decision. The trouble is they are assuming that the undisputed facts in the case

at bar exist as they existed in the case cited.  In that case
the court said that Mrs. Harder was guilty of negligence in

"attempting to cross a busy street at a place where pedes-
trians were not supposed to cross.  She was looking in a
direction nearly opposite to the direction she was going.  She
walked no doubt rapidly, for she was hurrying to catch a
car.  She emerged from behind an express wagon into the
path of vehicles, without looking for approaching vehicles.
Her negligence is manifest."

In this case we have no such manifest negligence.  The
respondents' evidence shows that, before stepping off the
curb into the street, they stopped and looked in all directions
for approaching automobiles and could see none.  The jury
evidently believed in their veracity.  Again, the instruction
is faulty in that it instructs the jury that, if it was shown
that the machine carried the ordinary side lights and such
side lights were lighted, and the other circumstances existed
as stated in the instruction, the plaintiffs were guilty of
contributory negligence.  This would leave out of view the
evidence produced by respondents of a disinterested witness
as to the insufficiency of the side lights, and would further
leave out of view the testimony of respondents that they did
not see or hear the car until about six feet away.  It is true
that this court has held repeatedly that a person crossing
a city street must make reasonable use of his senses in order
to observe impending danger.  But the evidence in this case
is that the respondents made reasonable use of their senses,
and the jury seemed to believe them.

Again, appellants contend that the court erred in refusing
to give the jury their second requested instruction, to the
effect that, if the plaintiffs in so undertaking to cross Har-
vard avenue at the middle of the block saw appellants' car
and assumed that it would pass down the east instead of the
west driveway, where the law requires it to go, and upon
such assumption stepped into collision with it, they were
guilty of contributory negligence and could not recover.  It

is argued in support of this assignment that respondents alleged in paragraph three of the complaint that they saw the car of appellants at the middle of the block. The statements contained in the paragraph of the complaint referred to are these:

"That while thus crossing Harvard avenue, a large, forty-horsepower Packard automobile, belonging to defendants, containing the defendant Cora E. Perkins, a minor son of defendants, and other persons, and driven southerly and then suddenly diagonally easterly and suddenly in a westerly direction on said avenue, either by the chauffeur in the employ of defendants or by said minor son or by one of the other occupants of such autombile, with the consent and at the request of defendants, ran into and collided with and knocked down both of these plaintiffs; all without any fault, negligence, or carelessness on the part of the latter."

We can see no allegation in that paragraph tending in any way to show that the respondents saw the car approaching them at any time previous to the time they testified that they saw it when it was about six to eight feet from them, coming very rapidly; and, as Mr. Tooker testified, as it came around the standing automobile in front of the Roycroft it had veered to the east to pass around it, and he assumed that it would pass east of him instead of west; that it then suddenly veered west, and it was all so quick it may be inferred that he could not tell where it was going, but attempted to throw his wife out of its way by thrusting her to the left and forward. There is no inference to be derived from this that the respondent assumed that the automobile would be driven down the east instead of the west driveway, contrary to the law of the road, or that, acting on such assumption, he stepped into collision with it. Great stress is laid upon this detail by appellants, and it is strenuously insisted throughout their argument that respondents assumed that the car would be driven down the east driveway instead of the west driveway, contrary to the law of the road. Neither of the respondents testified that they did so assume,

and their actions as described by them, together with all
the testimony, were questions of fact and inference for the
jury, and we are unable to resolve this question as one of
law.   Even if they had assumed that the car would pass
down the east driveway instead of the west and had acted
upon that assumption, if its motions were as sudden and
as rapid as they testified, it would still have been a question
for the jury to determine whether the appellants were
negligent.   As was stated in *Sheffield v. Union Oil Co.*, 82
Wash. 386, 144 Pac. 529:

"Being in imminent danger, an emergency was presented,
and whether, under this emergency, the respondent acted with
due prudence is, under all the authorities, a question of fact
for the jury.   The law does not scrutinize too carefully an
act done by one who has been put in a position of danger
by the one who inflicts injury upon him, leaving it for the
jury to say under such circumstances whether the act in seek-
ing to avoid the danger was the act of an ordinarily prudent
man."

See, also, *Van Dyke v. Johnson*, 82 Wash. 377, 144 Pac.
540.

It is insisted that, by refusing appellants' request for this
instruction, there was taken from the jury the duty of de-
termining the contributory negligence of the respondents in
falsely assuming that the car would pass where the ordinance
did not permit it to pass, and that the case should therefore
be reversed under the authority of *Minor v. Stevens*, 65
Wash. 423, 118 Pac. 313, 42 L. R. A. (N. S.) 1178.   The
trial court gave substantially the instructions on negligence
on the part of the users of dangerous instrumentalities such
as automobiles, and contributory negligence on the part of
pedestrians using the streets and in crossing the streets at
places other than the street intersections, as were approved
in the *Minor* case cited, from the observations in *Hannigan
v. Wright*, 5 Penn. (Del.) 537, 63 Atl. 234.   In the *Minor*
case, those observations as to mutual duties of the parties

19—86 wash.

are said to be a fair statement of the law. So in this case, we think the trial judge gave very full, fair, and illuminating instructions upon these questions.

It is further contended that the trial court erred in submitting to the jury the ordinance respecting the sounding of a horn by an automobile operator in the presence of known danger; but we think this was proper. Respondents pleaded and relied in part on the violation by appellants of the ordinance. Under the circumstances shown by appellants themselves—that their headlights had gone out some time previously, that they were driving upon a dark street without such headlights as were required by the ordinance, and that they did not give any signal or warning to persons who might be using the streets either at the crossings, or otherwise, of the movement of their automobile—all these were questions of fact to be considered by the jury in weighing and determining whether or not it was the negligence of appellants that caused the injuries. It is true the ordinance does not in terms require that a horn or signal device be sounded in the middle of a block, but it does require that such signal device be sounded as a warning where danger exists to any person in or upon the street. It was for the jury to determine whether or not the conditions of the appellants' automobile existed as testified in behalf of respondents, and if so, whether it was negligence for the driver of the automobile not to sound his signaling device at any place in the streets. *Burian v. Seattle Elec. Co.*, 26 Wash. 606, 67 Pac. 214; 33 Cyc. 902, 1309; 2 Elliott, Roads and Streets (3d ed.), 443; *Peterson v. Seattle Elec. Co.*, 71 Wash. 349, 128 Pac. 650; *Sullivan v. Smith*, 123 Md. 546, 91 Atl. 456.

Appellants assign error in the refusal of the court to give an instruction requested by them, to the effect that, if the jury found from the evidence that, at the time the plaintiffs allege they came into collision with and were injured by defendants' automobile, said car had the side lights burning, and that the view from the place where the plaintiffs at-

tempted to cross the street northward to East Harrison
street was unobstructed, and that the plaintiffs, had they
exercised due diligence, would have been able to discover the
appellants' car as it approached East Thomas street; that
they either failed to discover the approach of the car or,
knowing of its approach, attempted to cross the street at
the point alleged in the complaint one hundred to one hun-
dred and fifty feet from the street intersection; the attempt
to so cross the street at that place in front of an approach-
ing car was itself an act of contributory negligence such as
would prevent plaintiffs' recovery. Again, the trouble with
this instruction is that it leaves out of consideration the
question of whether the side lights were so burning as to
constitute such lights as could be seen the distance that the
requested instruction assumed. There is a conflict in the
evidence upon this point and the evidence is not undisputed,
but there is evidence tending to show that the side lights, even
though lighted, could not be seen any distance to exceed ten
or fifteen feet. It is obvious that, if respondents had reached
the place ten or fifteen feet from where the car was approach-
ing them and if, as their testimony tended to show, the car was
approaching at a speed exceeding twenty or twenty-five miles
an hour, the question of the lights and of their observation
of the lights, as assumed in this instruction, was obviously
improper. Had the requested instruction included the refer-
ence to the question of the sufficiency of the lights carried
to be observed to such distance, it would have been proper.
On this subject the court instructed the jury as follows:

"The failure to provide the lights required by this ordi-
nance, if you find from the evidence the defendants did fail
to provide them—and that is a question of fact for you to
determine—would not constitute liability on the part of the
defendants unless the failure to provide the lights was the
proximate cause of the accident; and if you find from the
evidence that the plaintiffs, as they crossed the street, had
actual knowledge of the approach of the machine, whether
from observation or any other kind, of light on the machine,

or from any sound emitted from the machine, if you find that these plaintiffs had actual knowledge of the approach of the machine, or ought to have had such knowledge in the exercise of reasonable care on their part, in season to avoid the collision that occurred, then the negligence of the defendants, if any, you could not hold them liable for damages, and the plaintiffs could not recover."

The court further instructed the jury:

"If you find that plaintiffs or either of them, were crossing Harvard avenue on foot at the point designated 100 to 150 feet north of the intersection of Thomas street, and further found that at the time they attempted to cross the street the night was dark, rain was falling, then I instruct you as a matter of law that plaintiffs were required to exercise a greater degree of care than if they had been attempting to cross at a street intersection, and it was their duty to exercise a great degree of care and diligence for the purpose of ascertaining whether automobiles or other vehicles were approaching; that is, to use a greater degree of diligence than if they were crossing at intersections. And if you find from the evidence that they did not exercise such a degree of care or diligence and that this was the proximate cause of the accident without which it would not have occurred, then they would be guilty of contributory negligence and cannot recover."

It seems, therefore, that the court instructed the jury as favorably to appellants as it could, and that they were in no wise prejudiced by the refusal to give the instructions requested by appellants upon the question of contributory negligence. *Mickelson v. Fischer*, 81 Wash. 423, 142 Pac. 1160; *Segerstrom v. Lawrence*, 64 Wash. 245, 116 Pac. 876; *Lewis v. Seattle Taxicab Co.*, 72 Wash. 320, 130 Pac. 341; *Chase v. Seattle Taxicab & Transfer Co.*, 78 Wash. 537, 139 Pac. 499; *Franey v. Seattle Taxicab Co.*, 80 Wash. 396, 141 Pac. 890; *Graham v. Allen & Nelson Mill Co.*, 78 Wash. 589, 139 Pac. 591; *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351; *Morrison v. Seattle Elec. Co.*, 63 Wash. 531, 115 Pac. 1076; *Edwards v. Seattle, Renton*

*& Southern R. Co.*, 62 Wash. 77, 113 Pac. 563. We con-
clude, therefore, that all the questions relied upon by appel-
lants were questions of fact, properly submitted to the jury
under fair and comprehensive instructions.

The last complaint made by appellants is that the verdict
is too large. In any event, the recovery for the husband
could not have been over $700 under the demand of the com-
plaint, which, after the verdict was reduced by the court to
$3,000, leaves the sum of $2,300, apparently allowed the
wife. Inasmuch as she had no earning capacity, this was un-
doubtedly awarded to her for her pain and. suffering and
permanent injuries. It certainly seems large, but it is not
so excessive that we can say that the amount of the judg-
ment is the result of passion or prejudice or any illegal in-
fluence. We do not feel, therefore, that we are justified in
interfering. *Hammons v. Setzer*, 72 Wash. 550, 130 Pac.
1141; *Kelly v. Navy Yard Route*, 77 Wash. 148, 137 Pac.
444. The trial judge having interfered to the extent of re-
ducing the verdict by $1,000, and having seen the parties
and heard their testimony, and having exercised his discre-
tion as to the amount which the respondents should recover,
we will not interfere. *Lynch v. Northern Pac. R. Co.*, 67
Wash. 113, 120 Pac. 882.

The judgment is affirmed.

MORRIS, C. J., MOUNT, MAIN, and ELLIS, JJ., concur.