[No. 26761.   Department Two.   December 15, 1937.]

OSCAR LUND, *Appellant,* v. THE WESTERN UNION TELEGRAPH COMPANY *et al., Respondents.*[1]

*L. H. Brown* and *John Huneke,* for appellant.

*Witherspoon, Yantes, Witherspoon & Kelley,* for respondents.

MILLARD, J.—While traversing Hamilton street at its intersection with Montgomery street, in the city of Spokane, a pedestrian was struck by an automobile operated by Alfred E. Beitlich in the service of the Western Union Telegraph Company. The pedestrian instituted this action to recover from the employee

[1]Reported in 74 P. (2d) 220.

and the employer for personal injuries sustained as a result of that accident. Defendants denied negligence on their part and pleaded in bar of the action contributory negligence of the plaintiff as the proximate cause of the accident. Plaintiff prosecutes this appeal from the judgment of dismissal entered on the verdict in favor of the defendants.

Error is first assigned on the denial of appellant's motion for a new trial on the ground of the insufficiency of evidence to support the verdict. It is argued that respondents' negligence amounts to negligence as a matter of law, and that any negligence of appellant by reason of jay-walking (walking outside the boundaries of the crosswalk) was not the proximate cause of the accident.

Any question whether the negligence of the respondents or the contributory negligence of the appellant was the proximate cause of the accident is foreclosed by the verdict of the jury. That verdict is based on conflicting evidence, therefore the evidence of the respondents must be taken as true, as well as all reasonable inferences deducible from such evidence.

"Since the verdict of the jury, we must consider the facts resolved as presented by the respondents. Where there is conflict in the evidence, the facts are for the jury and, unless physically impossible or naturally improbable so that reasonable minds could not differ thereon, we are compelled to accept as conclusive all those facts which must necessarily have been resolved by the jury in respondents' favor." *Tooker v. Perkins,* 86 Wash. 567, 574, 150 Pac. 1138.

The weather was clear and dry when the accident occurred after dark about 7:30 p. m., September 12, 1936, at the intersection of Hamilton and Montgomery streets in the city of Spokane. No traffic lights or other signals were at that intersection. Hamilton

street runs north and south. It is seventy-seven feet wide at the intersection due to the straightening of a slight jog in the street at that point by cutting off the northeast and southwest corners of the intersection. Montgomery street is forty feet wide and runs east and west.

Respondents' witnesses testified that appellant was walking east across Hamilton street five or six feet north of the north line of the north crosswalk of the intersection. The width of the crosswalk is fixed at ten feet by the lines marking the northern and southern boundaries of the crosswalk. Section 127, ordinance No. C5505, of the city of Spokane provides that a pedestrian, when crossing a street outside the lines of the sidewalk projected, shall yield the right of way to vehicles traveling upon the street. Appellant, who was sixty-five years old at the time of the accident, was familiar with conditions at the intersection as he had lived in that vicinity seventeen years. Beitlich's automobile, with headlights burning, was proceeding at a lawful rate of speed north on Hamilton street. No other traffic was near the intersection at that time.

On the east side of Hamilton street south of Montgomery street is a solid row of store buildings, the windows of which were illuminated at the time of the accident. Those lights, together with the illumination from an arc light in the center of the intersection, made a glare. Against that glare, to the north, was a black background, as there were no other lights for a distance of several blocks north of the arc light in the center of the intersection of Hamilton and Montgomery streets.

Appellant testified that, when he arrived at the center of Hamilton street, he looked to the south for approaching traffic. He observed Beitlich's automobile more than a block south of the intersection.

There was nothing unusual about the operation of the automobile to excite the attention of appellant, who continued his journey—thirty-eight or thirty-nine feet remained for appellant to traverse before arrival at the east curb—across Hamilton street. When he was at a point ten to twenty or twenty-five feet from the east curb of Hamilton street, the appellant again glanced to the south and saw Beitlich's automobile, which was then one-half block distant from the intersection. Appellant did. not again see—he testified he never heard the noise of the automobile's approach—the automobile until subsequent to the collision, which, according to his testimony, occurred at a point seven or eight feet west of the east curb of Hamilton street within the boundary lines of the north crosswalk, outside of which he never stepped. The automobile, after it struck appellant, was stopped within a distance of not to exceed one and one-half times its length.

Beitlich testified that the first time he saw appellant was after the automobile passed the arc light in the center of the intersection (this arc light, according to the map, is twenty feet from the south boundary of the north crosswalk), at which time appellant was approximately ten feet north of and facing the automobile, a little "to my left, that would be to the west." Appellant stepped to the left (to the west) and then to the right (to the east).

". . . Well, it wasn't what you would exactly call a step. It was sort of a waver, first to my left and then back again . . . To the right, yes sir; my right."

When appellant wavered or stepped to the right, Beitlich steered the automobile to the left and applied the brakes, but his efforts to avoid striking the appellant were unavailing. Beitlich could not see all of

the north crosswalk because of the glare made by the arc light in the center of the intersection and the lights in the store windows on the east side of Hamilton street and the unlighted background to the north, until his automobile passed under the arc light in the center of the intersection.

We elicit from our examination of the statement of facts that appellant was in doubt as to the point in the intersection from which he first and last viewed the automobile. Whether he first looked at the automobile when he was in the middle of the intersection or when he was twenty-five feet from the east curb of Hamilton street, and whether he was in the middle of the intersection or from ten to twenty-five feet west of the east curb of Hamilton street when he last looked to the south for approaching traffic, are, of course, questions of fact for the jury. That is, at what point he first saw the automobile and at what point he made the second and last observation before he was struck, constituted questions of fact for the jury.

If he were, as the verdict reflects the jury believed, jay-walking (crossing the street outside the boundaries of the crosswalk), the automobile had the right of way. Whether such negligence was the proximate cause of the accident, was a question for the jury. Whether, under the conditions described above, the respondents were guilty of negligence and whether such negligence was the only proximate cause of the accident, were questions of fact for the jury. Even if there were negligence in the operation of the automobile, if appellant was guilty of contributory negligence which was the proximate cause of the accident, no error was committed in denying the appellant's motion for a new trial. Obviously, the question whether the jay-walking of the appellant and his fail-

ure to look to the south within time to avoid the collision constituted such negligence as to prevent a recovery were questions of fact for the jury. *Chase v. Seattle Taxicab & Transfer Co.,* 78 Wash. 537, 139 Pac. 499; *Moseley v. Mills,* 145 Wash. 253, 259 Pac. 715.

"We have, time and again, said that one must, before undertaking to cross a street, look for approaching vehicles, but whether, after so doing and while making the crossing, he must again look or continue to look, depends on many circumstances and conditions; such as the amount of traffic; the probability of there being approaching vehicles; whether the statutes or ordinances give him the right of way; whether other objects or things have attracted his attention. Manifestly this is a question for the jury." *Olsen v. Peerless Laundry,* 111 Wash. 660, 665, 191 Pac. 756.

Error is next assigned on the giving of instructions Nos. 12, 11, 13, 14 and 10.

It is insisted that instruction No. 12 erroneously excused the automobilist's failure to see the appellant pedestrian and it is also in error in not instructing the jury as to the duty of the operator of an automobile to avoid pedestrians at intersections.

Instruction No. 5 defined the duties prescribed by the ordinances of the city of Spokane and the statutes of this state of operators of motor vehicles at street intersections. By another instruction, the jury was instructed as to the duty of Beitlich to yield the right of way to the appellant if the latter were on the crosswalk; that, if Beitlich failed to stop or divert the course of his automobile so as to avoid colliding with the appellant within the crossing lines, it would be immaterial whether appellant looked for traffic approaching from the south before proceeding across the east half of the intersection if, as a reasonably prudent person, he would be justified in trying to cross if he had so looked, and in such event appellant would have had a

right to assume that Beitlich would not violate the crossing ordinance but would yield the right of way to appellant, as the ordinance provides. The jury were also instructed respecting the degree of care a pedestrian is required to exercise when crossing a street outside the lines of the sidewalk projected. Instruction No. 12, when read with instructions Nos. 5, 6 and 7, above summarized, is not properly subject to appellant's criticism.

Appellant complains that instruction No. 11 would cover a case where a pedestrian suddenly darted in front of an automobile if operated as it should have been. It is argued there is no evidence that the appellant suddenly crossed the path of the automobile, or that Beitlich could not have avoided the accident by reasonable driving.

There is evidence from which the jury could reasonably infer that the appellant suddenly appeared out of the darkness north of the crosswalk about ten feet from the automobile, and that, after a short period of indecision as to whether he would go to the east or to the west, he hastily proceeded in one of those directions; that the automobile was under control and that Beitlich could not have avoided the accident by reasonable driving. The jury may have believed, as it doubtless did, under the evidence, that the appellant was jay-walking and oblivious to the approach of the automobile until it was only eight to ten feet distant.

Appellant complains that instruction No. 13 is erroneous because there is no evidence that he did not make reasonable use of all his senses in crossing the intersection. It is also insisted that instruction No. 14 is erroneous in that it fails to cover the right of the appellant to rely on the respondents' observance of the ordinance giving pedestrians in intersections the right of way.

The two instructions deal with the question of contributory negligence of appellant if the jury should find that he was not a jay-walker. The jury was charged that it was the duty of the appellant, even though it be found that appellant had the right of way in crossing Hamilton street, to make use of all of his senses to observe danger; and if, by reason of his failure so to do, he sustained injuries, he would be guilty of contributory negligence barring recovery for such injuries.

Even if Beitlich were guilty of negligence as a matter of law—and he would be if he violated the ordinance or statute respecting the right of way of pedestrians on crosswalks—appellant would not be thereby relieved of the duty of exercising care for his own safety. By another instruction, the jury was charged that appellant had the right to assume that Beitlich would not violate the crossing ordinance but would yield the right of way to the appellant as the ordinance provided. There is evidence from which the inference reasonably follows that appellant could have seen and heard the approaching lighted automobile in time, had he looked and listened as he should, to avoid the collision. The verdict reflects the belief of the jury that he failed to see that which he should have seen and did not hear that which he should have heard, hence he is in the position of one who did not look and did not listen.

One having the right of way at an intersection is required to exercise some care to avoid an approaching automobile. The general rule respecting the right of way at street intersections is stated as follows in *Hooper v. Corliss,* 146 Wash. 50, 261 Pac. 645:

"The right of way given by the city ordinance is a relative right only, and does not justify one who is entitled to the right of way in asserting his rights,

when, by the exercise of due care, he can or should see that to do so is likely to cause an accident and injury to himself or another, and that one so insisting upon the exercise of his right of way, under circumstances which would cause a reasonably prudent person not to do so, is guilty of negligence or contributory negligence, as the case may be. Here, each party was claiming the right of way under his own theory of the case, and it was therefore most important that the jury should have been advised that neither had an absolute right of way, and that the relative right, which the law gives, must be exercised prudently, in the light of conditions known to the person acting, at the time. It was error not to give the requested instruction or one of similar import."

Instruction No. 10 deals with the contributory negligence of appellant if he were a jay-walker. When instructions Nos. 10, 11, 12, 13 and 14 are considered with the other instructions—the instructions must be considered as a whole—we find nothing therein constituting reversible error.

The judgment is affirmed.

STEINERT, C. J., BEALS, BLAKE, and ROBINSON, JJ., concur.